U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

MAY 2 9 2007

ROBERT H. SHEMWELL, CLERK
BY _____
         DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| KEVIN LANE BAKER,<br>    Plaintiff | CIVIL ACTION<br>SECTION "P"<br>NO. CV05-1914-A |
| VERSUS | |
| TIM WILKINSON, et al.,<br>    Defendants | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

### REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983, in forma pauperis, by pro se plaintiff Kevin Lane Baker ("Baker") on November 3, 2005. The named defendants are Tim Wilkinson ("Wilkinson") (warden of the Winn Correctional Center ("WCC") in Winnfield, Louisiana), Corrections Corporation of America ("CCA") (operator of WCC), Virgil Lucas (chief of security at WCC), Tommy Glover (assistance chief of security at WCC), and Angel Allen Martin ("Martin") (assistant warden of WCC), NP Kathy Richardson, LPN Angelina Davis, Nurse Richards, Martha Booker, and Anna Boyd, all employed at WCC.[1] A summons was also issued to Tim

---

[1] Nurse Richards, Martha Booker, and Anna Boyd were never served; it does not appear that Baker completed summonses for them. Accordingly, I will recommend that the complaint against these defendants be dismissed without prejudice under Fed.R.Civ.P. 4(m). See McGinnis v. Shalala, 2 F.3d 548, 550 (5th Cir. 1993), cert. den., 510 U.S. 1191, 114 S.Ct. 1293, 127 L.Ed.2d 647 (1994); Systems Signs Supplies v. U.S. Dept. of

Keith, although he is not a named defendant (Doc. Item 15).

Baker's remaining claims are that, while he was incarcerated in WCC in June 2005, the defendants denied him adequate medical care and failed to protect him (Doc. Items 1, 12).[2] More specifically, Baker claims Nurse Practitioner Kathy Richardson denied him medical care for bleeding hemorrhoids, Nurse Davis insisted he use Anusol, a prescription ointment on which the warning label warned against using on bleeding hemorrhoids, the nurses threatened Baker with disciplinary action if he did not take HCTZ, a prescription medication for high blood pressure, which Baker does not suffer from, he was denied the surgery on his hemorrhoids prescribed by the prison doctor, Dr. Rodriguez, and he was given laxatives instead of surgery (Doc. Item 1). Baker also claims WCC is understaffed due to a CCA corporate policy of having only two guards on each unit floor with no guards stationed inside the tiers (which are not completely observable from outside), using inmates to guard other inmates, and conducting too few weapons searches and shakedowns (Doc. Item 1). For relief, Baker asks for outside medical treatment, medication as ordered by the doctor, injunctive relief, compensatory and punitive monetary damages, costs, and a jury trial.

---

Justice, 903 F.2d 1011, 1013 (5th Cir. 1990); Kersh v. Derosier, 851 F.2d 1509, 1512 (5th Cir. 1988).

[2] Baker has withdrawn failure to protect claim (Doc. Item 21).

Defendants and Keith answered the complaint and filed a motion for summary judgment (Doc. Items 19, 23), to which Baker responded. Defendants' motion for summary judgment is now before the court for disposition.

## Law and Analysis

### The Law of Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that a summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a

genuine issue to be tried.

In this regard, the substantive law determines what facts are "material". A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1959). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).

<u>Failure to Protect Claim</u>

Baker contends the defendants fail to adequately protect

4

inmates at WCC because CCA has a policy of understaffing the guards. Baker contends that, instead of employing sufficient guards, CCA uses inmates to fill some guard positions.

Baker has not alleged that he was been assaulted or threatened by inmates acting as guards, or that the inmates acting as guards have failed to protect him from other inmates. Apparently, Baker is seeking monetary relief due to Eighth Amendment violations and is seeking injunctive relief in order to prevent possible future harm.[3]

The use of trusty guards is universally condemned by penologists and is unconstitutional. Holt v. Sarver, 309 F.Supp.

---

[3] An actual injury is a constitutional prerequisite to a Section 1983 claim. Lewis, 518 U.S. at 351-53, 116 S.Ct. at 2180. The requirement that an inmate alleging a constitutional violation must show actual injury derives ultimately from the doctrine of standing. Lewis, 518 U.S. at 349, 116 S.Ct. at 2179. See also, Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999). The violation of a constitutional right constitutes an "actual injury". The Fifth Circuit has stated, in Lewis v. Woods, 848 F.2d 649, 651 (5th Cir. 1988), that a violation of constitutional rights is *never* de minimis, a phrase meaning so small or trifling that the law takes no count of it. Thus, according to the Supreme Court, nominal damages are the appropriate award where constitutional rights have been violated but the plaintiff has not sustained, or proven, actual damages. Carey v. Piphus, 435 U.S. 247, 266-67, 98 S.Ct. 1042, 1053-54 (1978); Oladipupo v. Austin, 104 F.Supp.2d 643, 651 (W.D.La. 1999).

The rule in the Fifth Circuit is that in the absence of proof of actual, compensatory damages, a plaintiff who has been deprived on his constitutional rights may only collect nominal damages. However, the Fifth Circuit also adheres to the general rule that a punitive award may stand in the absence of actual damages where there has been a constitutional violation. Louisiana Acorn Fair Housing v. LeBlanc, 211 F.3d 298, 303 (5th Cir. 2000), pet. for cert. filed, No. 00-504 (Sept. 20, 2000).

362 (D.C. Ark. 1970), aff'd, 442 F.2d 304 (8th Cir. 1971). Also, Roberts v. Williams, 456 F.2d 819 (5th Cir.), cert. den., 404 U.S. 866, 92 S.Ct. 83 (1971); Dreyer v. Jalet, 349 F.Supp. 452 (D.C.Tex. 1972), aff'd, 479 F.2d 1044 (5th Cir. 1973), and cases sited therein. A trusty system which allows inmates to exercise unchecked authority over other inmates constitutes cruel and unusual punishment in violation of the Eighth Amendment. Gates v. Collier, 501 F.2d 1291, 1308 (5th Cir. 1974); Ruiz v. Estelle, 503 F.Supp. 1265 (D.C. Tex. 1980), and cases cited therein.

Defendants failed to address the issues of understaffing guards and using inmates to guard other inmates in their motion for summary judgment. Therefore, defendants' motion should be denied on this issue.

Denial of Medical Care

Baker contends he was denied adequate medical care for his bleeding hemorrhoids; Baker alleges he was not given the recommended surgery because CCA would not pay for it.[4]

When the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs, e.g., food, clothing, shelter, medical care, and

---

[4] Baker also alleges the medical staff wrote him up for refusing to take blood pressure medicine he did not need. However, there is no evidence in the record before this court that he was written up.

6

reasonable safety, it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him but from the limitation which it has imposed on his freedom to act on his own behalf. Hare v. City of Corinth, 74 F.3d 633, 639 (5th Cir. 1996), and cases cited therein. The basic concept underlying the Eighth Amendment is nothing less than the dignity of man. Hope v. Pelzer, 536 U.S. , S.Ct. (June 27, 2002), citing Trop v. Dulles, 356 U.S. 86, 100 (1958). The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. Among unnecessary and wanton inflictions of pain are those that are totally without penological justification. In making this determination in the context of prison conditions, a court must ascertain whether the officials involved acted with deliberate indifference to the inmates' health or safety. We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious. Hope v. Pelzer, 536 U.S. 730, 737-738, 122 S.Ct. 2508, 2514-2515 (2002), and cases cited therein.

Under the Eighth Amendment, a lack of proper inmate medical care can be "cruel and unusual punishment" only if it is "sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct.

7

285, 50 L.Ed.2d 251 (1976). The Supreme Court defined "deliberate indifference" as "subjective recklessness", or, in other words, a conscious disregard of a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994). Because an inadvertent failure to provide adequate medical treatment does not violate the Eighth Amendment, deliberate indifference does not include a complaint that a physician has been negligent in diagnosing or treating a medical condition, Estelle, 97 S.Ct. at 291, or disagreement with medical treatment, Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997).

Although the Eighth Amendment does not, by its precise words, mandate a certain level of medical care for prisoners, the Supreme Court has interpreted it as imposing a duty on prison officials to ensure that inmates receive adequate medical care. A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Easter v. Powell, 467 F.3d 459, 464 (5th Cir. 2006), citing Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).

A physician's order sheet dated June 15, 2005, ordered that Baker be scheduled for a clinic visit to evaluate the need for hemorrhoid surgery; that visit was not scheduled (Doc. Item 36, p.

8

65). Baker refused the prescribed Anusol ointment (Doc. Item 36, p. 117).[5] On August 4, 2005, the physician's order sheet shows Baker was to have a surgery consult at E.A. Conway Hospital due to internal and external hemorrhoids, which had not been relieved by conservative measures (Doc. Item 36, pp. 64, 94). On August 15, 2005, a surgery consultation was requested from E.A. Conway Hospital concerning Baker's internal and external hemorrhoids, but the consultation request was refused, with a note to call the corporate office. CCA asked for the size of Baker's hemorrhoids, which Dr. Rodriguez measured on August 18, 2005; since Baker had 2cm. external hemorrhoids and multiple internal hemorrhoids, the request for a surgery evaluation was repeated (Doc. Item 36, pp. 63, 94). In October 2005, the physician's order sheet states Dr. Pacheco was to evaluate Baker's "reported" hemorrhoids and the need for surgical intervention; Baker was informed that CCA had turned down the request for the second time (Doc. Item 36, Ex. p. 110).

On October 28, 2005, an evaluation noted Baker's chronic hemorrhoid problem, a 1/4 inch non-painful, prolapsed hemorrhoidal tissue which was not thrombosed, with no active bleeding, and it was noted that Baker's fifteen year old hemorrhoid problem could be

---

[5] Anusol ointment is an external hydrocortisone topical which can used for relief from the swelling and discomfort of hemorrhoids and other rectal problems. MEDLINEplus Health Information, Drug Information: Anusol, *available at* http://www.nlm.nih.gov/medlineplus/druginfo/medmaster (a service of the U.S. National Library of Medicine and the National Institutes of Health).

9

managed medically at the present time (Doc. Item 36, Ex. p. 93). In December 200, the physician's order sheet again stated that Baker needed to go to E.A. Conway Hospital for his chronic rectal bleeding, from an unknown source, which had not responded to treatment for hemorrhoids (Doc. Item 36, pp. 61, 91, 124). It was noted the bleeding may be from a higher source (Doc. Item 36, Ex. p. 91).

In February 2006, an examination showed external hemorrhoids (Doc. Item 34, p. 13), but the precise cause of Baker's rectal bleeding had still not been determined (Doc. Item 34, p. 21); it did not appear to be caused by the external hemorrhoids (Doc. Item 34, p. 12). Colonoscopies and CBC's were ordered several times by Dr. Pacheco and Dr. Rodriguez, but were apparently cancelled by WCC/CCA due to cost (Doc. Item 34, pp. 5-11, 13, 24); it was noted that Baker had previously had a colonoscopy in the 1980's (Doc. Item 34, p. 13). In September 2006, Baker was referred to the LSU-Shreveport surgery clinic for a colonoscopy due to rectal bleeding of unknown etiology for several months (Doc. Item 34, pp. 19-21). The medical staff at WCC treated Baker's hemorrhagic rectal bleeding as hemorrhoidal, but the staff and Dr. Pacheco noted that the treatment had been completely ineffective even after a year (Doc. Item 34, pp. 6, 11). A CBC was ordered and obtained in December 2006 (Doc. Item 34, p. 25).

In February 2007, Baker finally had a surgical consult for his

10

hemorrhoids; non-thrombosed external hemorrhoids were noted and her was referred for a colonoscopy (Tr. p. 123). On February 7, 2007, a colonoscopy was finally performed and the presence of internal hemorrhoids was confirmed (Doc. Item 34, p. 28). A CBC was ordered (Doc. Item 34, p. 30), but the appointment was cancelled (Doc. Item 34, p. 32).

Defendants' motion for summary judgment relies on the argument that they provided Baker some level of medical care, so that met the constitutional requirements. The affidavit of Kathy Richardson, a nurse practitioner employed at WCC, shows Baker was provided with Anusol ointment and an increased fiber diet for hemorrhoids. Richardson also states Baker sent to a clinic to evaluate his need for surgery. However, defendants records also show they refused to pay for the additional tests needed complete the evaluation, even though conservative, less costly treatment had already proven ineffective. It is noteworthy that, although Baker's physicians repeatedly stated Baker had internal hemorrhoids, Baker was only provided with an ointment for the treatment of external hemorrhoids. As in <u>Easter</u>, supra, it appears that defendants have ignored Baker's complaints and intentionally treated him incorrectly.

Therefore, there are genuine issues of material fact on the issue of medical care which preclude a summary judgment in favor of defendants.

11

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that defendants' motion for summary judgment be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this _____ day of May, 2007.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE