
RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE _____
BY _____
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| KEVIN LANE BAKER,<br>Plaintiff | CIVIL ACTION<br>SECTION "P"<br>NO. CV05-1914-A |
| VERSUS | |
| TIM WILKINSON, et al.,<br>Defendants | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983, in forma pauperis, by pro se plaintiff Kevin Lane Baker ("Baker") on November 3, 2005, and amended on April 18, 2007 (Doc. 32). The remaining defendants are Tim Wilkinson ("Wilkinson") (warden of the Winn Correctional Center ("WCC") in Winnfield, Louisiana), Corrections Corporation of America ("CCA") (operator of WCC), and Angel Allen Martin ("Martin") (assistant warden of WCC), NP Kathy Richardson, and LPN Angelina Davis, all employed at WCC.[1]

Baker claims that, while he was incarcerated in WCC in June 2005, the defendants denied him adequate medical care (Doc. Items 1, 12, 32).[2] More specifically, Baker claims Warden Wilkinson and

---

[1] Tommy Glover, Virgil Lucas, Nurse Richards, Martha Booker, and Anna Boyd were previously dismissed (Doc. 60).

[2] Baker withdrew his failure to protect claim (Doc. Item 21).

Assistant Warden Martin was aware Baker needed surgery but denied it because it was not in CCA's budget, Nurse Practitioner Kathy Richardson denied him medical care for bleeding hemorrhoids, Nurse Davis insisted he use Anusol, a prescription ointment on which the warning label warned against using on bleeding hemorrhoids, the nurses threatened Baker with disciplinary action if he did not take HCTZ, a prescription medication for high blood pressure which Baker does not suffer from, he was denied the surgery on his hemorrhoids prescribed by the prison doctor, Dr. Rodriguez, and he was given laxatives instead of surgery (Doc. Item 1).

For relief, Baker asks for compensatory and punitive monetary damages, costs, and a jury trial. Baker's request for injunctive relief (medical treatment) is now moot since he underwent hemorrhoid surgery in 2009.

Defendants and Keith answered the complaint and filed a motion for summary judgment (Doc. Items 19, 23), which was denied (Doc. 39). Defendants then filed a second motion for summary judgment (Doc. 65), which Baker has opposed (Doc. 67). Defendants' second motion for summary judgment is now before the court for disposition.

## Law and Analysis

### The Law of Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that a summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986). A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable

jury to return a verdict in her favor." <u>Lavespere v. Niagara Mach. & Tool Works, Inc.</u>, 910 F.2d 167, 178 (5th Cir. 1990) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249, 106 S.Ct. 2505 (1986)). The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. See <u>Celotex</u>, 477 U.S. at 325, 106 S.Ct. 2548. See also <u>Lavespere</u>, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. See <u>Celotex</u>, 477 U.S. at 324, 106 S.Ct. 2548. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. See id. at 325, 106 S.Ct. 2548; <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir.1994); <u>Austin v. Will-Burt Company</u>, 361 F. 3d 862, (5th Cir. 2004). This burden is not satisfied with "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence. <u>Little</u>, 37 F.3d at 1075.

All evidence must be considered, but the court does not make credibility determinations. If the movant fails to meet its

initial burden, summary judgment should be denied. Little, 37 F.3d at 1075.

Denial of Medical Care

Baker contends he was denied adequate or proper medical care for his bleeding hemorrhoids and surgery was delayed because CCA would not pay for it. Defendants argue, in their second motion for summary judgment on this issue, that on January 30, 2009, Baker underwent the hemorrhoid surgery. Defendants contend they provided appropriate conservative treatment for Baker because the surgery was "elective," and, therefore, Baker's claims are based on nothing more than a disagreement with defendants as to the type of medical care he should have received.

Although the Eighth Amendment does not, by its precise words, mandate a certain level of medical care for prisoners, the Supreme Court has interpreted it as imposing a duty on prison officials to ensure that inmates receive adequate medical care. A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Easter v. Powell, 467 F.3d 459, 464 (5th Cir. 2006), citing Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).

This court reviewed this issue and the medical records in

defendants' first motion for summary judgment. The summary of those records in the previous Report and Recommendation (Doc. 38) is set forth in a footnote below.[3] In this, their second motion

---

[3] "A physician's order sheet dated June 15, 2005, ordered that Baker be scheduled for a clinic visit to evaluate the need for hemorrhoid surgery; that visit was not scheduled (Doc. Item 36, p. 65). Baker refused the prescribed Anusol ointment (Doc. Item 36, p. 117). On August 4, 2005, the physician's order sheet shows Baker was to have a surgery consult at E.A. Conway Hospital due to internal and external hemorrhoids, which had not been relieved by conservative measures (Doc. Item 36, pp. 64, 94). On August 15, 2005, a surgery consultation was requested from E.A. Conway Hospital concerning Baker's internal and external hemorrhoids, but the consultation request was refused, with a note to call the corporate office. CCA asked for the size of Baker's hemorrhoids, which Dr. Rodriguez measured on August 18, 2005; since Baker had 2cm. external hemorrhoids and multiple internal hemorrhoids, the request for a surgery evaluation was repeated (Doc. Item 36, pp. 63, 94). In October 2005, the physician's order sheet states Dr. Pacheco was to evaluate Baker's "reported" hemorrhoids and the need for surgical intervention; Baker was informed that CCA had turned down the request for the second time (Doc. Item 36, Ex. p. 110).

"On October 28, 2005, an evaluation noted Baker's chronic hemorrhoid problem, a 1/4 inch non-painful, prolapsed hemorrhoidal tissue which was not thrombosed, with no active bleeding, and it was noted that Baker's fifteen year old hemorrhoid problem could be managed medically at the present time (Doc. Item 36, Ex. p. 93). In December 2005, the physician's order sheet again stated that Baker needed to go to E.A. Conway Hospital for his chronic rectal bleeding, from an unknown source, which had not responded to treatment for hemorrhoids (Doc. Item 36, pp. 61, 91, 124). It was noted the bleeding may be from a higher source (Doc. Item 36, Ex. p. 91).

"In February 2006, an examination showed external hemorrhoids (Doc. Item 34, p. 13), but the precise cause of Baker's rectal bleeding had still not been determined (Doc. Item 34, p. 21); it did not appear to be caused by the external hemorrhoids (Doc. Item 34, p. 12). Colonoscopies and CBC's were ordered several times by Dr. Pacheco and Dr. Rodriguez, but were apparently cancelled by WCC/CCA due to cost (Doc. Item 34, pp. 5-11, 13, 24); it was noted that Baker had previously had a colonoscopy in the 1980's (Doc. Item 34, p. 13). In September 2006, Baker was referred to the LSU-Shreveport surgery clinic for

6

for summary judgment, defendants have added an affidavit by Dr. James Knecht (Doc. 65, Ex. 2), a deposition of Dr. James Cole (Doc. 65, Ex. 3), and Baker's most recent medical records.

1.

Defendants' argue that they did not have to provide Baker with hemorrhoid surgery because it was "elective."

Dr. Knecht stated in his affidavit (Doc. 65, Ex. 2) that he has been a licensed medical doctor since 1979; according to his curriculum vitae, he specializes in "family practice." Dr. Knecht stated he reviewed Baker's complaint and medical file, and that he has had "extensive experience" treating patients with hemorrhoids and has prescribed both conservative care and surgical care (Doc. 65, Ex. 2). Dr. Knecht stated that internal hemorrhoids typically do not cause pain. Dr. Knecht noted that Baker's October 28, 2005, health services progress note stated he did not have any active bleeding, which indicated he did not have an emergency condition

---

a colonoscopy due to rectal bleeding of unknown etiology for several months (Doc. Item 34, pp. 19-21). The medical staff at WCC treated Baker's hemorrhagic rectal bleeding as hemorrhoidal, but the staff and Dr. Pacheco noted that the treatment had been completely ineffective even after a year (Doc. Item 34, pp. 6, 11). A CBC was ordered and obtained in December 2006 (Doc. Item 34, p. 25).
"In February 2007, Baker finally had a surgical consult for his hemorrhoids; non-thrombosed external hemorrhoids were noted and her was referred for a colonoscopy (Tr. p. 123). On February 7, 2007, a colonoscopy was finally performed and the presence of internal hemorrhoids was confirmed (Doc. Item 34, p. 28). A CBC was ordered (Doc. Item 34, p. 30), but the appointment was cancelled (Doc. Item 34, p. 32)."

and his hemorrhoids were not serious and did not require surgery. Dr. Knecht further stated that, although the LSU Health Services Center had conducted a colonoscopy on February 7, 2007, found small internal hemorrhoids, and prescribed Anusol suppositories for a week and a visit to the surgery clinic in one week, it was reasonable for CCA to cancel the surgery clinic visit and prescribe the use of Anusol suppositories for three months, instead. Dr. Knecht concluded that, because Baker's hemorrhoids were a non-life threatening, chronic condition, surgery was not required and was elective rather than mandatory.

Defendants also submitted a deposition by Dr. Phillip Cole taken in February 2009 (Doc. 65, Ex. 3). Dr. Cole's curriculum vita reflects that he has been board certified in colon and rectal surgery for over thirty years (Depo. P. 6). Dr. Cole stated the medical records show he treated Baker at the colorectal surgery clinic at the LSU Health Science Center in October of 2008, but he does not remember Baker (Depo. pp. 10-11). Dr. Cole stated the out-patient clinic note from the colorectal surgery clinic showed they scheduled a preop and surgery appointment for Baker on December 18, 2008 (Depo. pp. 11-13). Dr. Cole further stated the examination showed Baker had external and internal hemorrhoids, the internal hemorrhoids were bleeding and had not responded to conservative treatment, and Baker had difficulty cleansing himself after bowel movements due to the external hemorrhoids (Depo. p.

12). Dr. Cole stated he thought Baker would benefit from elective surgery on his hemorrhoids because of his recurrent and persistent history of rectal bleeding and difficulty cleansing (Depo. pp. 12-13). Dr. Cole stated that one of his partners, Dr. William Grimes, performed the surgery with a resident, Dr. Jason Tippett, on January 30, 2009, at LSU (Depo. p. 13).

Dr. Cole explained that he referred to Baker's hemorrhoidectomy as elective surgery, as opposed to emergent surgery, because surgery was not required immediately, so Baker could "elect" a time to have the surgery done (Depo. p. 17). Dr. Cole stated that examples of emergent surgery would be a rectal abscess that needed draining, or a very large, thrombosed, clotted external hemorrhoid that was so tender the patient could not move around or get comfortable even with pain medication (Depo. p. 17). Dr. Cole explained that examples of "elective" surgery are where symptoms are chronic and recurrent, may improve for a while or may get worse, but the patient usually is able to pick a "time of election" to have the surgery or have a time chosen based on the physician's operative schedule (Depo. p. 18). Dr. Cole stated that Baker's surgery was reasonable, but not absolutely required because, although the problem was chronic and recurrent and had not gotten better after a trial with medicine, the problem had existed for at least a decade (Depo. p. 18).

Dr. Cole further testified that he had not been provided with

9

Baker's medical records from the colorectal surgery clinic on July 21, 2008, August 4, 2008, and October 1, 2008. Dr. Cole stated that Baker had seen other physicians on those dates (Depo. pp. 19-20). When asked whether he thought Baker's hemorrhoidectomy was *not* necessary surgery, Dr. Cole responded that, although it was not emergency surgery, it was a treatment option Baker would benefit from because Baker's symptoms had been chronic and recurrent over a long period of time, Baker had made an effort to resolve his symptoms with conservative medical treatment which was unsuccessful, and the hemorrhoids were bleeding and sometimes painful (Depo. p. 20). Dr. Cole further explained the surgery was necessary to help Baker get rid of his hemorrhoid problems (Depo. p. 21).

Baker's new medical records show that, after Baker's colonoscopy on February 7, 2007, he was referred by the physician for a CBC to further evaluate for possible upper GI source of bleeding since his hemorrhoids did not appear to be a significant source that could explain his reported bleeding (Doc. 67, Ex. B14; Doc. 65, Baker Bates No. 324). As he testified, Dr. Cole recommended that surgery in October 2008. The medical records from Baker's hemorrhoid surgery on January 30, 2009, show Baker had admitting and discharge diagnoses of prolapsed internal hemorrhoids (Doc. 67, Ex. B55; Doc. 65-4, p. 59).

Defendants' new evidence from Dr. Knecht and Dr. Cole does not

assist the defendants. The CCA physicians referred Baker to the surgical clinic on June 15, 2005, August 4, 2005, December 2005, and September 2006. CCA explicitly turned down the physicians' requests for surgery consults in August 2005 and October 2005 Baker finally had a surgical consult in February 2007. As described above, in February 2007, defendants substituted a three month trial of Anusol for the one week trial ordered by the physician at the surgery clinic. Dr. Pacheco again referred Baker to the surgery clinic in April 2007 (Doc. 65, Ex. Vol. 2, p. Baker Bates No. 623), but CCA did not allow the consult until August 2007, when he underwent an upper endoscopy (Doc. 65, Ex. Vol. 2, Baker Bates Nos. 515-518). The CCA physicians again referred Baker to LSU surgery clinic in May 2008 (Doc. 65, Ex. Vol. 2, Baker Bates No. 607) and June 2008 (Doc. 65, Ex. Vol. 2, Baker Bates No. 606); Baker was sent to the LSU general medicine clinic in July 2008 (Doc. 65, Ex. Vol. 2, Baker Bates No. 591). Baker had his surgery in January 2009.

Moreover, on the issues of whether Baker's medical care was delayed and whether his surgery was necessary, this court gives more weight to the opinions and diagnoses of Dr. Pacheco and Dr. Rodriguez, the two CCA physicians who treated Baker, and Dr. Cole, the colorectal surgeon who actually examined Baker to determine whether Baker should have surgery, than to the opinion of Dr. Knecht, a family-practice physician who never examined Baker.

Thus, the delay in the surgical evaluation resulted in a lengthy delay in the next step in Baker's treatment, a step the physicians believed was necessary because Baker's hemorrhoids had not responded to conservative treatment.

Under the Eighth Amendment, the prison must take care of a prisoner's serious medical needs. A "serious" medical need is one that has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Nash v. Fields, 134 F.3d 383, *2 (10th Cir. 1998), citing Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980), cert. denied, 450 U.S. 1041 (1981). The Eighth Amendment also embraces the treatment of medical conditions which may cause future health problems. Helling v. McKinney, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993).

Defendants argue Baker did not have a "serious medical need" for surgery because the surgery was merely elective. However, the classification of a surgery as elective does not abrogate a prison's duty or power to promptly provide necessary medical treatment for prisoners. Johnson v. Bowers, 884 F.2d 1053, 1056 (8th Cir. 1989). Denial of necessary treatment due to classification of the surgery as elective surgery, and due to budgetary constraints, does not justify cruel and unusual punishment. Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986)(hernia repair surgery). In Hathaway v. Coughlin, 37 F.3d 63,

64-69 (2d Cir. 1994), cert. den., 513 U.S. 1154, 115 S.Ct. 1108 (1995), the court upheld a jury verdict on an Eighth Amendment claim in favor of the plaintiff where the defendants delayed the plaintiff's elective hip surgery for two years. In <u>West v. Keye</u>, 541 F.Supp. 534, 540 (D.Del. 1982), the district court held that a seventeen month delay between recommendation and performance of elective surgery constituted deliberate indifference. In <u>Delker v. Maass</u>, 843 F.Supp. 1390, 1392-1399 (D.Or. 1994), the district court found an inmate was injured by a two year delay in surgery for his non-incarcerated hernia. The district court in <u>Delker</u> stated that prison officials may not avoid their duty to provide medical treatment by the simple expediency of labeling such a treatment as elective, and distinguished elective surgeries such as surgical repair of a hernia, from elective surgeries such as surgical breast augmentation or tummy tucks. Also, <u>Garrett v. Elko</u>, 120 F.3d 261 (4th Cir. 1997); <u>Monmouth Cty. Correctional Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 348 n.32 (3d Cir. 1987), cert. den., 486 U.S. 1006, 108 S.Ct. 1731 (1988); <u>Faulkner v Griffith</u>, 1995 WL 55300 (E.D.Tex. 1995).

Dr. Cole stated in his deposition that Baker's hemorrhoid surgery was elective in the sense that it was not an emergency situation, but that the surgery was necessary because Baker's chronic problems had not responded to conservative treatments. Thus, the fact that Dr. Cole classified Baker's surgery as

13

"elective" did not justify defendants' delay in providing medical care to Baker. Moreover, the actual delay occurred in getting Baker's surgery consult and colonoscopy, rather than in providing the surgery after it was recommended. Therefore, the classification of Baker's surgery as "elective" is actually irrelevant in this case.

Defendants' argument, that they did not have to provide Baker with the surgery because it was "elective," is clearly meritless and does not support a summary judgment in their favor.

2.

The defendants also argue that Baker was not denied medical care because he was given conservative treatment. Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. The decision whether to provide additional treatment is a classic example of a matter for medical judgment. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Gobert v. Caldwell, 463 F.3d 339 (5th Cir. 2006). Prison officials are liable for failure to provide medical treatment if they are deliberately indifferent to a

14

prisoner's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285 (1976). Deliberate indifference may be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment. Estelle, 429 U.S. at 104-05, 97 S.Ct. at 291.

In the case at bar, everyone appears to agree that conservative treatment was initially medically appropriate for a time. However, the point at which the physicians abandoned those treatments as unavailing and decided to send Baker for a surgery consult is the point at which defendants became deliberately indifferent to Baker's serious medical needs by denying him access to medical personnel capable of evaluating his need for other treatment, and intentionally providing him with incorrect treatment by continuing the conservative treatment which had already proven to be unsuccessful and ran counter to the physicians' medical judgment. The defendants substituted their own inexpert, nonmedical judgment for the medical judgment of the physicians in denying Baker's surgical consult and instead continuing successful treatment. Therefore, Baker did not disagree with the medical treatment prescribed by his doctors; he disagreed with the treatment given to him by the defendants who were not medical doctors.

Therefore, this claim does not support a summary judgment in defendants' favor.

Finally, there is a genuine issue of material fact as to whether Baker suffered an "injury" as a result of the delay in appropriate medical care. Defendants contend Baker's bleeding internal hernias did not cause him pain. Baker contends otherwise.

An actual injury is a constitutional prerequisite to a Section 1983 claim. Lewis v. Casey, 518 U.S. 343, 351-53, 116 S.Ct. 2174, 2180 (1996).[4] The requirement that an inmate alleging a constitutional violation must show actual injury derives ultimately from the doctrine of standing. Lewis, 518 U.S. at 349, 116 S.Ct. at 2179. See also, Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999). The violation of a constitutional right constitutes an "actual injury". The Fifth Circuit has stated, in Lewis v. Woods, 848 F.2d 649, 651 (5th Cir. 1988), that a violation of constitutional rights is *never* de minimis, a phrase meaning so small or trifling that the law takes no count of it. Thus, according to the Supreme Court, nominal damages are appropriate

---

[4] Obviously, an injury may come in various forms, depending on the constitutional right violated. In a general conditions of confinement case, having been subjected to an unconstitutional condition of confinement constitutes the injury. In a claim for denial of access to the courts, however, the plaintiff must show that his position as a litigant was actually prejudiced. Lewis v. Casey. This requirement appears to stem from the need to show causation between the prison's deficiency and the injury. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130 (1992) (a plaintiff must meet three requirements to establish Article III standing: (1) an actual or imminent injury in fact, (2) causation, and (3) redress-ability).

where constitutional rights have been violated but the plaintiff has not sustained, or proven, actual damages.[5] Carey v. Piphus, 435 U.S. 247, 266-67, 98 S.Ct. 1042, 1053-54 (1978); Oladipupo v. Austin, 104 F.Supp.2d 643, 651 (W.D.La. 2000).

The rule in the Fifth Circuit is that in the absence of proof of actual, compensatory damages, a plaintiff who has been deprived of his constitutional rights may only collect nominal damages. However, the Fifth Circuit also adheres to the general rule that a punitive award may stand in the absence of actual damages where there has been a constitutional violation. Louisiana Acorn Fair Housing v. LeBlanc, 211 F.3d 298, 303 (5th Cir. 2000), cert. den., 121 S.Ct. 1225 (U.S. 2001).

In the case at bar, defendants contend, and Dr. Knecht stated in his affidavit, that internal hemorrhoids typically do not cause pain. Dr. Cole stated that internal hemorrhoids "as a rule are not painful." Both doctors stated that external hemorrhoids could be painful. Baker stated his internal hernias hurt "sometimes."

Therefore, there are genuine issues of material fact as to whether Baker was physically injured by the delay in his medical

---

[5] The rule in the Fifth Circuit is that in the absence of proof of actual, compensatory damages, a plaintiff who has been deprived of his constitutional rights may only collect nominal damages. However, the Fifth Circuit also adheres to the general rule that a punitive award may stand in the absence of actual damages where there has been a constitutional violation. Louisiana Acorn Fair Housing v. LeBlanc, 211 F.3d 298, 303 (5th Cir. 2000), cert. den., 121 S.Ct. 1225 (U.S. 2001).

care, whether he is entitled to damages for emotional distress, and whether he is entitled to nominal or punitive damages. See 42 U.S.C. § 1997e(e)(physical injury is a necessary predicate to an award of compensatory damages for mental or emotional injury).

Therefore, there are genuine issues of material fact on the issue of denial of medical care which preclude a summary judgment in favor of defendants. Defendants' motion for summary judgment should be denied.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that defendants' motion for summary judgment (Doc. 65) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM**

ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 10th day of June, 2009.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE